UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>**MEDSCI DIAGNOSTICS INC.,**<br><br>Debtor | Chapter 11<br><br>Case No.: 10-04961 |
| **MEDSCI DIAGNOSTICS, INC.**<br><br>Debtor-Plaintiff<br><br>**vs.**<br><br>**STATE INSURANCE FUND CORPORATION**<br><br>Defendant. | Adversary Proceeding<br><br>Case No.: 10-00094 |

### URGENT MOTION TO RECONSIDER RULING ON VALIDITY OF CONTRACT

TO THE HONORABLE ENRIQUE S. LAMOUTTE
UNITED STATES BANKRUPTCY JUDGE:

**COMES NOW** the State Insurance Fund Corporation (the "SIF"), through its undersigned counsel and hereby files its Motion to Reconsider Ruling on Validity of Contract (the "Motion to Reconsider").

### Preliminary Statement

As a threshold matter, and as a result of, among other things, discovery taken by the SIF on July 6, 2010, the SIF respectfully requests that this Honorable Court reconsider its ruling in open court of June 18, 2010 and determine that the contract between the debtor and the SIF is null and void. As part of its ruling on June 18, 2010, the Court focused on two aspects in denying, without

prejudice, the SIF's oral motion: (a) the type of services provided under the contract and whether the same were in fact medical services; and (b) that even if the services provided under the contract were medical in nature, that there was no evidence at that time that MEDSCI's principals were engaged in the unauthorized and/or illegal practice of medicine.

The SIF respectfully requests that the Court reconsider its ruling for the following reasons. First, it is an uncontested fact, as admitted by the debtor during its corporate depositions on July 6, 2010 (and by the SIF's former administrator on his deposition of the same day), that pursuant to the contract, MEDSCI agreed to provide, and has been providing and obtaining payment and seeking payment, on medical services, specifically, radiology services. These are the principal and/or essential, if not sole, services that MEDSCI renders to the SIF and upon which payment under the contract is made. These services require a professional license, specifically, a medical one. These facts are uncontested.

Further, the nullity of the contract is not based on whether the principals of MEDSCI provided medical services without the corresponding license, but rather on the uncontested fact that the party that executed the contract to provide such services is MEDSCI—a corporation. The Puerto Rico Supreme Court has clearly and consistently stated that the issue herein is that a corporation simply cannot obtain a medical or professional license (as it is not a natural person) and, regardless of whether the services are in fact rendered by a duly licenses professional, if the corporation was the party that entered into the contract, the same is null and void. This line of cases, described in detail below, is clear, and its ruling is not predicated on whether the individuals that in fact provided the services were duly licensed (in fact, in both of these cases, the individuals providing the services were duly licensed, as were the corporations owners and principals). The issue in those cases was, as here, that the corporation contracted to provide professional services, and the same is an illegal act under Puerto Rico law that renders the contract null and void.

2

Therefore, pursuant to applicable law and the uncontested facts of this case, the contract between MEDSCI is null and void and, accordingly, the SIF hereby requests that the Court reconsider its ruling for these reasons, and those set forth below.

### Undisputed Facts

1. MEDSCI "is incorporated and exists within the Commonwealth of Puerto Rico, with corporate registry number 163283". <u>See</u>, Docket No. 1 (the "Complaint") at ¶ 8.

2. MEDSCI "was created, capitalized and financed, exclusively, to bid in order to obtain a contract with SIF, to provide radiology and interpretation services. It eventually did bid and was successful in its bid." <u>See</u>, Complaint, at ¶ 8.

3. Accordingly, or about September 1st, 2007, MEDSCI and the SIF entered into a contract for the "provision of professional services" titled "Contract for the Provision of Diagnostic Testing at Installations of the Corporation for the Regions of Carolina, Mayaguez, Ponce and The Industrial Hospital" (the "Medical Services Contract"). <u>See</u>, **Exhibit 1** to the Complaint.

4. Pursuant to the Medical Services Contract, MEDSCI agreed to provide the following medical/professional services and, accordingly, to produce and/or interpret the following diagnostic medical tests: "1. Conventional Radiography [,] 2. Computerized Tomography (CT), High Computerized Tomography [, and] 3. Magnetic Resonance (MRI)." MEDSCI also "pledge[d] to render its diagnostic testing services and other *specialized studies* that may be required of it by…[SIF] that originates the referral case within a 24 to 48 hour term …[including] the following: a. interpretation of Radiological Test Results [,] b. interpretation of CT Scans[, and] c. interpretation of MRI's." <u>See</u>, **Exhibit 1** to the Complaint, First Clause at §§ A and I.

4. In essence, pursuant to the Medical Services Contract, MEDSCI "is dedicated to providing radiology services under contract, to SIF, at three different SIF facilities". <u>See</u>, Complaint, at ¶ 8.

5. On July 6, 2010, the SIF conducted the corporate deposition of MEDSCI. As per the testimony of MEDSCI's corporate representatives, principals and officials (and as admitted in their

3

declarations filed with the Court), it is an uncontested fact that the Medical Services Contract was negotiated and executed, by MEDSCI and the SIF, for the specific purpose of rendering medical radiology services by MEDSCI. See, **Docket No. 32** at Attachment 2, Declaration Under Penalty of Perjury by Osvaldo Carlo at ¶¶ 4-5 (describing the Contract as a radiology contract and stating that the services to be provided included "the establishment of a radiology interpretation center where we would have available radiologists to interpret the different diagnostic studies and where the reports would be prepared for the electronic forwarding to the different regions".)

6. Further, as admitted by MEDSCI during its corporate depositions and as per the declarations filed with the Court, it is an uncontested fact that the services that MEDSCI renders pursuant to the Medical Services Contract and upon which it seeks and has obtained payment are solely medical radiology services. Id. at Attachment 1(a), Declaration Under Penalty of Perjury by Ralph Vallone at ¶ 3 (describing the services to be provided under the Contract as "radiologic services".); see also, **Docket No. 34** at Attachment 1, Declaration Under Penalty of Perjury by Ana Mónica Vizcarrondo at ¶ 3 (stating that MEDSCI provides radiology services to the SIF.)

7. Further, during the deposition of the former administrator to the SIF, Mr. Carlos Ruiz Nazario also confirmed the uncontested fact that the Medical Services Contract was negotiated and executed for MEDSCI to provide radiology (medical) services. See, **Docket No. 32 at Attachment 3**, Declaration Under Penalty of Perjury by Carlos Ruiz Nazario at ¶¶ 4 and 9 (stating that the services to be hired included the "production and interpretation of conventional radiological tests, computerized tomography (CT), high resolution computerized tomography by magnetic resonance (MRI) and the rendering of tele-radiological services.")

8. As expressly admitted by MEDSCI'S officials in open court, none of its officials and/or directors are duly certified physicians with the corresponding licenses to provide medical services.

9. On June 18, 2010, this Honorable Court issue a ruling in open court by virtue of which it denied without prejudice the SIF's argument that the Medical Services Contract is null and void.

4

10. As part of its ruling on June 18, 2010, the Court focused on two aspects in denying, without prejudice, the SIF's oral motion: (a) the type of services provided under the contract and whether the same were in fact medical services; and (b) that even if the services provided under the contract were medical in nature, that there was no evidence at that time that MEDSCI's principals were engaged in the unauthorized practice of medicine.

11. Notwithstanding said determination, the SIF respectfully requests that this Honorable Court reconsider its ruling, inasmuch as contrary to this Honorable Court's preliminary impression of the Medical Services Contract, relevant case law and statutes, the services provided under the Medical Services Contract are clearly professional/medical in nature, and the illegality of the Medical Services Contract does not arise from the fact that MEDSCI's directors and/or officials are illegally providing medical services in their personal capacities or not, but rather from the fact that-- under Puerto Rico law--, corporations are clearly prohibited from executing contracts with the object of rendering professional services, including but not limited to radiology and/or medical services, unless they are duly incorporated as a professional services corporation, which MEDSCI is not.

### Request for Reconsideration and Basis Therefore

12. It is well-settled law that "Federal Rule of Civil Procedure 59(e) grants bankruptcy courts license to reconsider orders and judgments after their entry." Ellenberg v. Bd. of Regents of Univ. Sys. of Georgia (In re Midland Mech. Contractors, Inc.), 200 B.R. 453, 453 (Bankr. N.D. Ga. 1996) (citations omitted).

13. Further, the court "has considerable discretion in reconsidering an issue." Maynard, 338 F. Supp. at 270 (*citing* Sussman v. Salem, 153 F.R.D. 689, 694 (M.D. Fla. 1994) and Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1238-39 (11th Cir. 1985)); See also: In re Quality Stores, Inc., 272 B.R. 643, 649 (Bankr. W.D. Mich. 2002) (noting that decisions under Rule 59(e) "rest [] within the sound discretion of the trial court").

14. The SIF requests that the Court reconsider its prior ruling since, as a result of the

5

clear jurisprudential precedent under Puerto Rico law, a corporation, such as MEDSCI, cannot enter into a contract or provide professional services and, if it does, the contract is null an void irrespective of whether the actual persons providing the services were duly licensed.

A.  **The Services Provided Under the Medical Services Contract are Medical/Radiological**

15.   As described above, it is uncontested that the services provided and agreed to by MEDSCI pursuant to the Medical Services Contract consist of medical and radiology services. See, *supra*, at ¶¶ 5-7..

B.  **The Services Provided Under the Medical Services Contract Require a Professional License**

16.   Under Puerto Rico law, to provide medical services, such as radiology services, a natural person requires a medical license.

17.   Specifically, the Board of Medical Examiners of Puerto Rico ("Board") has established certain standards, licensing, and requirements for the legal practice of medicine, for which whoever engages in illegal medical practices will incur in a criminal offense. See, 20 L.P.R.A. § 135(d)(a). Further, the Examining Board for the Diagnostic Imaging and Treatment Radiologic Technologists ("Radiology Board") regulates the rendering of radiological services by technologists and radiology physicians. The statutes governing this practice, state that any person who engages in said practice "and who as such intervenes in the operation or functioning of equipment that emits radiation, or other forms of electromagnetic energy, whether these are used for medical diagnosis or for treatment, shall carry out his/her functions under the supervision of a radiology physician and shall have a diagnostic imaging and treatment technologist license." *Id*. at § 3352. Furthermore, any person who performs the aforementioned profession without a duly license, will be guilty of a misdemeanor and may be imprisoned, upon conviction.

18.   The Radiology Board establishes that it is illegal for any person who does not hold a diagnostic imaging and treatment radiologic technologist license to: (1) engage in the above mentioned profession; (2) employ another person who does not hold the corresponding license to perform said profession; (3) advertise "him/herself as a diagnostic imaging and treatment radiologic

6

technologist without the proper supervision[,]…acts as a diagnostic imaging and treatment radiologic technologist… or violates any of the provisions of this chapter or regulations duly adopted by the [Radiology] Board." Id. at § 3370.

**C.     The Medical Services Contract is Null and Void Pursuant to Applicable Law.**

19.     It is axiomatic that under Puerto Rico's Civil Code, contracting parties may agree on any terms and conditions they deem convenient and beneficial, as long as said terms and conditions "are not in contravention of law, morals, or public order." See, 31 L.P.R.A. § 3372.

20.     Further, pursuant to Puerto Rico's law of corporations, a corporation can engage in activities or business except as to those acts that are excluded from those that a corporation can perform pursuant to applicable law and regulations. See, 14 L.P.R.A. § 1101.

21.     The Puerto Rico Supreme Court has interpreted similar provisions in the context of whether, as in this case, a corporation, as a matter of law, can enter into a contract that provides for rendering professional services.

22.     In Rasa Engineering Corp. v. Daubón, 86 D.P.R. 193 (1962) ("*Rasa*"), the Puerto Rico Supreme Court affirmed that since it is illegal for a corporation to engage in professional services such as engineering or architecture, then so is the contract pursuant to which such services were agreed upon. Id.

23.     In *Rasa*, a corporation had entered into a contract to provide, among other services, certain professional services, specifically, engineering and architecture services. Id. After the services were rendered, the corporation sued for payment due under the contract. Id. The other side to the contract asserted that the contract was null and void, since the corporation was not authorized to provide such professional services. Id.

24.     The Puerto Rico Supreme Court agreed and held that the contract at was **null and void**, inasmuch as they were related to a corporation's execution of a contract to provide engineering services, which is expressly prohibited by law, because the law governing the mandatory licensing for engineering, surveying and architecture in Puerto Rico, Act No. 399 from

7

May 10, 1951[1] ("Engineering Law"), is solely applicable to natural persons (as is the law providing for the licensing to practice medicine), since they are the only ones who can comply with the academic preparation and licensing requirements under this law. Id. at 195-196. For this reason, corporations, even if contemplated under the definition of person as set forth under the Engineering Law, will never be able to meet the requirements prescribed in said statute to obtain the applicable licenses to render professional engineering services. Id.

25. In *Rasa*, the Puerto Rico Supreme Court also reiterated the doctrine that states that when a contract is null and void for being contrary to public policy, a person who has accepted a benefit from said contract will not be impeded from defending itself from it, if it is enforced against him or her. Id. at 198; see also: Ruiz v. Mendez, 86 F. Supp. 29 (D. Puerto Rico 1949).

26. As a result of the above analysis, in *Rasa*, the Court held that, since the two stockholders of the corporation at issue were duly licensed engineers, that it would remand the case to allow said parties to amend the complaint, in order to establish the relationship, if any, between the corporation and its stockholders, and to establish if the stockholders were the actual parties in interest as to the claim alleged in the Complaint and therefore the parties with the right to recover the professional fees for the services rendered. Id. at 201(citations omitted).

27. After *Rasa*, in Colegio de Ingenieros y Agrimensores de Puerto Rico v. Autoridad de Acueductos y Alcantarillados de Puerto Rico y Metcalf & Eddy, Inc., 131 D.P.R. 735 (1992) ("*Metcalf*"), the Puerto Rico Supreme Court held, again, that a corporation is not legally authorized to engage in or execute a contract to provide professional services, such as engineering services, in Puerto Rico, and therefore any contract in which a corporation promises to render professional

---

[1] See, 20 L.P.R.A. § 681, *et seq*. (1951).
[3]     The SIF notes that as a result of Metcalf and Rasa the Puerto Rico legislature created a mechanism to allow entities to be formed to provide professional services – the professional service corporation. However, MEDSCI did not avail itself of such provisions, is not a professional service corporation, nor it can be since it does not satisfy the requirements of the same (e.g., among other requirements, such statute requires that all shareholders be duly licensed professionals on the services that the entity seeks to render). Specifically, order to incorporate a corporate entity as a PSC, all the stockholders of said entity have to be duly licensed in the particular profession that such PSC exclusively provides services for. In accordance to Corporate Law, a PSC may render professional services, only "through officers, employees and agents who are duly licensed or otherwise legally authorized to render such professional services within this jurisdiction." 14 L.P.R.A. at § 3925. Moreover, a PSC is not authorized to "engage in another business which is not the rendering of the professional services for which it was incorporated, or the auxiliary or complementary services thereto." Id. at § 3927.

8

engineering services, for which professional licenses are required, is contrary to the law. Id. See, 31 L.P.R.A. § 3372.

28. Specifically, in *Metcalf*, a corporation entered into a contract to provide certain professional services. To attempt to remedy the prohibition at law articulated by *Rasa*, the corporation agreed to subcontract duly licensed professional to render each and every service contemplated under the agreement which required a professional license. As in *Rasa*, it also appeared herein that all of the corporation's officers and owners were also duly licensed. The College of Engineers, however, argued that these acts did not cure the illegality of the contract, and that the same was null and void.

29. The Puerto Rico Supreme Court agreed, holding that the contract was **null and void**, and that the amendment to the contract pursuant to which the corporation hired duly licensed engineers to perform all of the functions and duties that required said license did not rectify the nullity of the contract. Id. at 767.

30. In explaining the issue, the *Metcalf* court stated that the issue was not whether the actual individuals rendering the service were duly licensed, but rather who was the party that offered to provide the services and executed the contract. Id. at 767. In that case, as in this, the party to the contract was a corporation, and, thus, the contract was null and void. Id. at 767.

31. As in *Metcalf* and *Rasa*, the Medical Services Contract is null and void. As in those cases, the contract required the corporation to provide professional services, specifically, radiology services. As in those cases, it is irrelevant whether the corporations owners or the persons providing the actual services in fact had the requisite licenses. As in those cases, it is irrelevant whether, in addition to professional services, the contracts provides for additional services that not require a license. As in those cases, it is irrelevant whether the services have been performed or the SIF had in the past accepted the same. As in those cases, the contract was executed by a corporation, which, in itself, is the determining factor on the illegality of the contract.[3]

32. Therefore, the SIF respectfully requests that the Court reconsider its ruling and find that the Medical Services Contract is null and void.

9

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 7th day of July, 2010.

It is certified that on this same date, a true copy of the foregoing was filed through the Court's CM/ECF system, which will generate a notice to all CM/ECF participants in this case.

        **O'NEILL & BORGES**
*Attorneys for the State Insurance Fund Corporation*
250 Muñoz Rivera Ave., Ste. 800
San Juan, PR 00918-1813
Telephone: 787-764-8181
Fax: 787-753-8944
E-mail: mauricio.muniz@oneillborges.com
      luis.marini@oneillborges.com
      carlos.sagardia@oneillborges.com

By: s/Mauricio O. Muñiz-Luciano
    Mauricio O. Muñiz-Luciano
    USDC No. 220914

By: /s/ Luis C. Marini-Biaggi
    Luis C. Marini-Biaggi
    USDC No. 222301

By: /s/ Carlos J. Sagardía-Abreu
    Carlos J. Sagardía-Abreu
    USDC No. 227510