UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

MEDSCI DIAGNOSTICS, INC.

DEBTORS

_____

MEDSCI DIAGNOSTICS, INC.

Plaintiffs

Vs.

STATE INSURANCE FUND CORP.,
through its ADMINISTRATOR
ZOIME ALVAREZ RUBIO,
et als

Defendants

_____

CASE NUMBER 10-04961- ESL

CHAPTER 11

ADVERSARY PROCEEDING NUMBER:

10-0094

## OPINION AND ORDER

This adversary proceeding is before the court upon the request by the defendant, the State Insurance Fund Corporation (the "SIF" or the "Defendant") for reconsideration of this court's ruling on the validity of the contract (the "Contract") between the plaintiff/debtor, MEDSCI DIAGNOSTICS, INC. ("MEDSCI" or the "Plaintiff"), and the SIF (dkt. #38), as supplemented (dkt. #s 49,50, 57); and the opposition thereto by the Plaintiff (dkt. #s 48, 54,58).  The matter was scheduled for an evidentiary hearing on October 25, 2010 (dkt. #93).  The hearing was held and the matter was taken under advisement.  After considering the pleadings before the court, the evidence presented at the hearing, and legal argument by counsel, the court hereby denies defendant's motion for reconsideration, and reaffirms its decision that the contract is not null and void.

## BACKGROUND

On June 6, 2010 MEDSCI filed the instant adversary proceeding for damages resulting from

- 2 -

the Defendant's breach of contract.[1]   On June 14, 2010 the Plaintiff filed an urgent motion for turn over of property and injunctive relief (dkt. #9). Plaintiff requested that the Defendant be ordered to comply with the terms of the contract and pay amounts owed for services rendered.  The motion was scheduled for a hearing on June 18, 2010 (dkt. #10).  At the hearing the court entered the following bench orders: 1.  Plaintiff will amend complaint to withdraw request for jury trial. 2.   The court denies the request to dismiss the complaint on sovereign immunity grounds for the reasons stated in open court. 3.  The court denies the request to dismiss the action on grounds that the Contract is null and void for the reasons stated in open court.  4.  The court approved the interim agreement between the parties for compliance with the terms of the Contract. (See dkt. #29).  The matter was continued for July 7, 2010. See minutes of hearing, dkt. #41.  At the hearing held on July 7 the court granted the SIF a period of five (5) days to supplement the motion for reconsideration filed on that same date.

After considering the pleadings filed by the SIF and MEDSCI, the court scheduled an evidentiary hearing to determine the validity of the Contract (dkt. #93).  The SIF filed its proposed findings of fact and conclusions of law (dkt. #115) and so did MEDSCI (dkt. #116,117,118,119,120,121). The evidentiary hearing was held and the following witnesses testified: Ms. Rosemary Alayón Romero (Executive Assistant to the SIF Administrator), Mr. Carlos Ruiz Nazario (former SIF Administrator who signed contract for SIF), Mr. Jorge Garcia Ortiz (Director of Medical Services for SIF), Dr. Felix Aponte La Luz(licensed radiologist specialized in diagnostic radiology) and Ralph Vallone, Jr., Esq. (Vice President, Treasurer and stockholder of MEDSCI). The Contract was presented as a joint exhibit.

### FINDINGS OF FACT

1. MEDSCI is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, with corporate registry number 163283.

2. MEDSCI is not incorporated as a professional service corporation.

---

[1] The court notes the decision on appeal in Civil No. 07-1125 (SEC), State Insurance Fund Corporation v. Western Imaging Services, Inc., dkt. # 79 in AP 05-0044, affirming a decision wherein the bankruptcy court held that the SIF had breached the contract with its unjustified circumvention of the exclusivity clause and awarded damages to Western.

- 3 -

3. The SIF is a public corporation and an arm of the Commonwealth of Puerto Rico that, pursuant to its enabling statute, was created specifically to provide workmen's compensation and insurance policies to employers with regards to workplace accidents.  See 11 L.P.R.A. §1, *et seq*. Accordingly, the SIF, through its enabling statute, is legally authorized, at its own facilities or through public and/or private contracts, to establish a coordinated, appropriate and vigorous program to guarantee the physical and vocational rehabilitation of injured employees who are incapacitated due to any illnesses and accidents suffered in the course of employment. See 11 L.P.R.A §§ 1-1(b).

4. On or about September 1, 2007, MEDSCI and the SIF entered into a contract to provide radiological diagnostic services titled "Contract for the Provision of Diagnostic Testing at the Installations of the Corporation for the Regions of Carolina, Mayaguez, Ponce and the Industrial Hospital (the "Contract").

5. MEDSCI's two (2) principals are duly licensed attorneys, but are not duly licensed physicians or radiologists.

6. MEDSCI does not have medical facilities.  The facilities wherein the radiology equipment owned and provided by MEDSCI are kept are those of the SIF.

7. The SIF runs a radiologic facility in all four contracted locations (Regions) with equipment supplied by MEDSCI.

8. The SIF performs all use of the equipment by means of its unionized technologists.

9. MEDSCI was financed, exclusively, to provide equipment and services to the SIF.

10. MEDSCI would transmit the readings by the SIF's pre-approved radiologists, while the SIF would provide the technical staff. The SIF, through its Director of Medical Services, would approve the physicians that would provide the radiological diagnostic services which MEDSCI was obligated to provide.

11. With regards to the technical staff, the SIF imposed the condition that MEDSCI could not retain its own technical personnel, but would have to perform all the contracted technical procedures using the staff provided by the SIF.

12. Pursuant to the terms of the Contract, MEDSCI would replace relevant existing

- 4 -

equipment with new state of the art equipment, and also create a tele-radiology network for the reading of studies by its licensed physicians as said cases might be forwarded by the SIF technical staff.  The fees paid by the SIF to MEDSCI are a lump sum for all services and obligations contracted.

13.  MEDSCI, as a corporation or through its shareholders did not make decisions regarding patients' treatment. MEDSCI's shareholders or officials do not intervene with the radiology services.  MEDSCI did not supervise the radiologists.

14. Radiologists contracted by MEDSCI exclusively and solely make their own medical decisions regarding their interpretation of the radiological diagnostic tests for conventional radiography, computerized tomography, high resolution computerized tomography and magnetic resonance.  The production and interpretation of the diagnostic tests were based on studies performed by the SIF medical technicians using MEDSCI's equipment installed at the SIF's facilities.  The images would be provided to the licensed physicians for their interpretation.  The licensed radiologists provided their interpretation services to MEDSCI on a fee for service basis.

15. MEDSCI does not practice medicine. The fact that a corporation contracts with physicians, for them to provide medical treatment, does not automatically mean that said corporation renders medical services.

THE CONTRACT[2]

The following provisions of the Contract are relevant to the controversy:

1.  Title of contract: "CONTRACT FOR THE PROVISION OF DIAGNOSTIC TESTING AT INSTALLATIONS OF THE CORPORATION FOR THE REGIONS OF CAROLINA, MAYAGUEZ, PONCE AND THE INDUSTRIAL HOSPITAL"

2.  Purpose of contract:

"The appearing parties have agreed to execute the present contract for the provision of Diagnostic Testing Services, . . ."

- - -

"SECOND: Pursuant to the former and addressing the need and convenience of relying on

---

[2]The court has used the English translation submitted by MEDSCI in dkt. # 116-3, Exhibit 2.  The same is not accurate in its form and paragraph sequence.  However, its substance does agree with Joint Exhibit I, which is the original contract, in Spanish.  Should there be any difference, Joint Exhibit I prevails and controls.

- 5 -

the availability of diagnostic testing services at our installations THE PARTIES execute a contract to provide radiological diagnostic services for the regions of Carolina, Mayaguez, Ponce and the Industrial Hospital which, besides modernizing it with the highest technology, shall increase the capacity and effectiveness of the services that we offer."

3. Services to be provided:

"THE PROVIDER by means of this contract obligates itself and pledges to assume the following obligations and to render to the CORPORATION the following services:

A. Provide and install at the physical installations of Carolina, Mayaguez and Ponce new modern equipment of high technology that are listed in but not limited to Attachment A of this contract and in accordance with the requirements of the Area of Medical Services. THE PROVIDER understands and accepts that it shall be liable for the production and interpretation of the following diagnostic tests:

1. Conventional Radiography

2. Computerized Tomography (CT), High Resolution Computerized Tomography

3. Magnetic Resonance (MRI)

B. Shall provide and install at the physical installations of the Industrial Hospital new high technology modern equipment that is listed but not limited to that in Attachment A of this contract and according to the needs of the Area of Medical Services. THE PROVIDER shall deliver a list of radiological equipment available at the time of execution of this contract, including a description of the same: brand, model, series, year and current state, certified by a physicist, and to include new equipment to be acquired.  This document shall be included as an Attachment B to this contract and be part and parcel of the same. THE PROVIDER shall deliver to THE CORPORATION a list describing all the equipment that is finally acquired within the first six (6) months of this contract period during which it must be one hundred percent operational in terms of the capacity of the new equipment.

D. THE PROVIDER pledges to install a tele-radiological network at all premises of THE CORPORATION and establish a center for remote readings with duly certified and licensed medical faculty available for rendering the service that is hereby hired.

E. THE PROVIDER shall conduct all work necessary to comply with the previous, and guarantee the effective provision of theses services during the life of this contract; including the installation of machines and equipment, as necessary, as well as their repair, and/or replacement. THE PROVIDER shall assume all expenses necessary to meet the obligations it assumes in this contract. Likewise, it pledges to submit to THE CORPORATION evidence concerning maintenance provided to the installed equipment.

G. THE CORPORATION shall not be obligated to repay any sum whatsoever to THE PROVIDER for the provision, installation, repair, maintenance, replacement or insurance of the

- 6 -

equipment it may install that is of its property.

I. It is understood and accepted BY THE PARTIES that THE PROVIDER pledges to render its diagnostic testing services and other specialized studies that may be required of it by THE CORPORATION that originates the referral case within a 24 to 48 hour term, unless impeded from meeting its contractual obligations due to a just cause, fortuitous act, *Force Majeure*, an act of nature or an event beyond its reach, the following:

a. Interpretation of Radiological Test Results

b. Interpretation of CT Scans

c. Interpretation of MRI's.

J. THE PARTIES expressly agree that the resources that THE PROVIDER may use in these installations shall be strictly professional and shall not hold an employer-employee relation of any sort whatsoever with THE CORPORATION.

I. The services that THE PROVIDER may render shall be solely and exclusively those that may be expressly required of it by THE CORPORATION, through existing and enforceable rules and regulations, especially those relative to utilization and quality assurance.
THE PROVIDER acknowledges and accepts furthermore that the same shall be offered solely and exclusively to patients of THE CORPORATION, duly referred, during working days and hours.

M. THE PARTIES also agree that for the rendering of these services, as well as for the discussion of related matters, there must be close coordination with the Regional Director of THE CORPORATION.

N. THE CORPORATION shall refer all its patients first to THE PROVIDER and should it not have availability of equipment or personnel for the required tests, or whenever the volume of patients is greater than the capacity of THE PROVIDER to render the services THE CORPORATION shall refer said patients to external providers."

4. Compensation:

"SECOND: COMPENSATION

A. THE PARTIES agree the that production and interpretation services of the diagnostic tests shall be required and repaid to THE PROVIDER, according to the current rates of THE CORPORATION for each services as these appear in Attachment C that becomes part and parcel of this contract.

B. THE PROVIDER must submit SIFC Form CFSE-2000 in all its parts and signed by the injured party and the physician that rendered the service as evidence that the service was provided. The absence of the signature of the physician in the original Form CFSE-2000 shall propitiate the return of the invoices."

5. Other:

"THIRD: SPECIAL PROVISIONS FOR MEDICAL SERVICES

I. THE PROVIDER understands and accepts that it may not invoice nor collect any sum of money

- 7 -

whatsoever from patients referred to its attention.

P. THE PROVIDER affirms that all the equipment it may operate and the services it may administer, that are the object of this contract with THE CORPORATION, have accreditations from the corresponding federal and local authorities to assure the quality of their provision and that it understands and accepts that in the event such accreditation or authorization were withdrawn to one or several of those services, this shall be cause sufficient for THE CORPORATION to deem this covenant resolved in all or in part were THE PROVIDER to find itself unable to correct such accreditation or authorization within a reasonable period of time."

APPLICABLE LAW

1. Pursuant to Puerto Rico's General Corporations Law "corporations may be organized under this subtitle to conduct or promote any lawful business or purpose, except those prohibited by the Constitution and laws of the Commonwealth." 14 L.P.R.A § 2601(b).

2. Services that are not contrary to law or good morals may be object of a contract. 31 L.P.R.A. § 3421.

3. Corporations may not practice or exercise professional services which require a certification from the Commonwealth of Puerto Rico. Rasa Engineering Corp. V. Daubon, D.P.R. 193 (1962); Colegio de Ingenieros y Agrimensores de Puerto Rico v. Autoridad de Acueductos y Alcantarillados de Puerto Rico y Metcalf Eddy, Inc., 131 D.P.R. 735 (1992).

4. The 1995 amendments to the Puerto Rico General Corporations Law authorized for the first time the exercise of professional services through a professional services corporation. 34 L.P.R.A. § 3401 - 3417.  For an excellent analysis of the professional services corporation under the laws of Puerto Rico see: Diaz Olivo, La Corporación Profesional, 68 Rev. Jur. U.P.R. 31 (1999).

5. A contract wherein a corporation, which is not incorporated as a professional services corporation, exercises services required to be performed by a duly licensed professional is null and void, irrespective of who benefitted from the transaction. Rasa Engineering Corp. V. Daubon, D.P.R. 193 (1962).

6. A contract that is null and void because the same provides for a corporation to perform professional services may not be subsequently amended to cure the defect. Colegio de Ingenieros y Agrimensores de Puerto Rico v. Autoridad de Acueductos y Alcantarillados de Puerto Rico y Metcalf Eddy, Inc., 131 D.P.R. 735 (1992).

DISCUSSION

The SIF alleges that the Contract in question is null and void as it is contrary to Puerto Rico's General Corporations Law and the holdings by the Supreme Court of Puerto Rico in Rasa and Metcalf.  The SIF's position is that in order for a corporation to provide professional services it must be organized as a professional services corporation.  The SIF submits that the only issue the court needs to address in determining whether the Contract is null and void is whether any of

- 8 -

the services provided required a professional medical license.  The court does not take such a limited perspective in analyzing the issue.

The court agrees that a corporation that is not a professional services corporation may not, as a corporation, perform professional services such as those requiring a professional medical license. If a contract so provides, then it is null and void under Puerto Rico law. However, a contract that allows a corporation to perform professional services through a duly licensed professional is a valid contract.  Such is the contract before the court.

A review of the scope of the services that were to be provided in the original contract between Autoridad de Acueductos y Alcantarillados and Metcalf Eddy, Inc.; Colegio de Ingenieros y Agrimensores de Puerto Rico v. Autoridad de Acueductos y Alcantarillados de Puerto Rico y Metcalf Eddy, Inc., 131 D.P.R. 735 (1992); differs from the ones in the Contract between the SIF and MEDSCI.  In Metcalf the contract provided for the corporation (Metcalf) to perform, as a corporation, design and construction services, which are professional services that must be rendered by duly licensed engineers and architects.  In the Contract before the court, the Contract envisioned the corporation to provide the services through duly licensed professionals.

The Contract provides that MEDSCI will be liable for the production and interpretation of the contracted diagnostic tests; the installation of a tele-radiological network at the SIF's premises and establish a center for remote readings with duly certified and licensed medical faculty available for rendering the services hired; the resources that MEDSCI may use in the SIF's installations shall be strictly professional; the services will be provided exclusively to the SIF's patients; MEDSCI must submit the SIF an official form signed by both the patient and the physician that rendered the services; and all services rendered by MEDSCI must have the accreditation from the corresponding federal and local authorities to assure the quality of their provision.  Clearly, these contractual provisions contemplate that the professional services to be rendered by MEDSCI to the SIF will be done through duly licensed professionals and not by the corporation as a corporation.

CONCLUSION

In view of the foregoing, the court hereby denies the SIF's motion for reconsideration and finds that the Contract between the SIF and MEDSCI is not null and void.  Consequently, there is a valid contract between the parties and each party must comply with its terms.

IT IS SO ORDERED.

Dated this 24th of November, 2010, in San Juan, Puerto Rico.

Enrique S. Lamoutte
United States Bankruptcy Court